IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KRISHA N. HEARD-HAMPTON o/b/o )
TYRIQUE HEARD, a minor,      )
                             )
            Plaintiff,       )
                             )
      v.                     )   Civil Action No. 05-988
                             )
JO ANNE B. BARNHART,         )
COMMISSIONER OF              )
SOCIAL SECURITY,             )
                             )
            Defendant.       )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 27th day of September, 2006, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for child's supplemental security income ("CSSI") under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, denied. The Commissioner's decision of March 3, 2005, will be reversed and this case will be remanded to the Commissioner solely for a determination of the amount of benefits to which plaintiff is entitled pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Krisha Heard-Hampton ("plaintiff") protectively filed an application for CSSI on behalf of her minor son, Tyrique Heard[1], on January 9, 2003, alleging a disability onset date of August 1, 2000, due to emotional problems and developmental disorders. Plaintiff's application was denied initially. At plaintiff's

---

[1] Tyrique was six years old and in first grade at the time of the hearing before the ALJ. (R. 12).

request an ALJ held a hearing on September 30, 2004, at which Tyrique and his mother, represented by counsel, appeared and testified. On March 3, 2005, the ALJ issued a decision finding that Tyrique is not disabled. On May 25, 2005, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Under the basic definition of disability for children set forth in the Act, an individual under the age of eighteen shall be considered disabled if that individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(I); see also 20 C.F.R. §416.906.

In determining whether a child is disabled under the Act, the ALJ must determine in sequence: (1) whether the child is doing substantial gainful activity; (2) if not, whether the child has a severe impairment; (3) if so, whether the child's impairment meets, medically equals, or functionally equals the listing of impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. §416.924(a).

In this case, after reviewing plaintiff's medical records, school records, and teacher/counselor questionnaires, the ALJ found that, although the evidence establishes that Tyrique suffers

from "severe impairments"[2] within the meaning of the Act, those impairments do not meet or medically equal the severity of any of the impairments listed in Appendix 1 of 20 C.F.R., Subpart P, Regulations No. 4, nor result in limitations that functionally equal the listings. As a result, the ALJ found that Tyrique is not disabled within the meaning of the Act.

Plaintiff challenges the ALJ's finding of not disabled at step three of the sequential evaluation process for childhood disability. Specifically, plaintiff contends that the record supports a finding that Tyrique's impairments functionally equal the listings under the criteria set forth in §416.926a. After reviewing the record, this court is compelled to conclude that the ALJ's finding that plaintiff's impairments do not functionally equal the listings is not supported by substantial evidence.

At step 3 of the sequential evaluation process for children, the ALJ must determine whether a claimant's severe impairments meet, medically equal, or functionally equal a listed impairment. 20 C.F.R. §416.924(d). The regulations set forth specific rules for evaluating whether the claimant has an impairment that meets a listing (20 C.F.R. §416.925), medically equals a listing (20 C.F.R. §416.926) or functionally equals a listing (20 C.F.R. §416.926a).

---

[2] The ALJ never specifically identifies the "severe impairments" to which he was referring, but he does address plaintiff's diagnosis of a pervasive developmental disorder and evaluates plaintiff's impairments under the listings for autistic disorders and other pervasive developmental disorders.

Plaintiff's sole contention in this case is that the ALJ erroneously found that Tyrique's impairment does not functionally equal the listings. Under the regulations, an impairment functionally equals the listings if it results in "marked" limitations[3] in two domains of functioning or an "extreme" limitation[4] in one domain. 20 C.F.R. §416.926a(a). The six domains of functioning to be considered in this evaluation are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. §416.926a(b)(1)(i)-(vi).

In this case, the ALJ determined that, although Tyrique suffers from marked limitations in the domain of attending and completing tasks, he has less than marked, or no, limitations in the other five domains of functioning. Accordingly, because the ALJ found no marked limitations in any two domains of functioning, he concluded that Tyrique's impairments are not functionally equivalent in severity to any listed impairment.

Plaintiff, however, contends that, in addition to marked limitations in attending and completing tasks, Tyrique also has

---

[3]. The regulations describe a "marked" limitation as "more than moderate" but "less than extreme." §416.926a(e)(2)(i). A "marked" limitation in a domain will be found "when your impairment(s) interferes _seriously_ with your ability to independently initiate, sustain, or complete activities." Id.

[4]. An "extreme" limitation is a limitation that is "more than marked" but does not necessarily mean a total lack or loss of ability to function. §416.926a(e)(3)(i).

marked limitations in the domain of acquiring and using information. Upon review, the court is convinced that the ALJ's finding that Tyrique has "less than marked" limitations in the domain of acquiring and using information is not supported by substantial evidence. Instead, the record establishes that Tyrique in fact does have marked limitations in that domain.

The general description of the domain for acquiring and using information is set forth in 20 C.F.R. §416.926a(g). In this domain, the focus is on how well the child acquires or learns information and how well the child uses the information he learns. Id. In this case, there is a plethora of evidence in the record demonstrating that Tyrique has marked limitations in this domain.

On April 8, 2003, Paul Bernstein, Ph.D., conducted a disability examination of Tyrique. Dr. Bernstein noted that Tyrique was "not responsive to questions or instructions, and his articulations are to himself." (R. 101). In regard to the domain of acquiring and using information, Dr. Bernstein noted it was not possible to determine Tyrique's ability to acquire information because Tyrique was "totally nonresponsive to verbal communication". (R. 102). However, Dr. Bernstein did note that while Tyrique is capable of speaking in full sentences clearly, "his remarks were entirely internalized." (R. 102).

Tyrique was evaluated by Cynthia W. Milberger, a certified school psychologist, on June 22, 2004, who diagnosed plaintiff with a pervasive developmental disorder, not otherwise specified. Of particular note regarding the domain of acquiring and using

information, Ms. Milberger observed that Tyrique "had significant difficulty with receptive vocabulary tasks presented without visual cues" on the Kaufman Survey of Early Academic and Language Skills and also reported "significant difficulty with auditory comprehension" on a Developmental Neuropsychological Assessment. (R. 140).

In an Individualized Education Program (IEP) report completed on August 1, 2004, it is recorded that, according to a teacher report, Tyrique was functioning at the kindergarten level in communication/language arts. (R. 115). Importantly, the report states that Tyrique "displays significant performance difficulties in tasks/activities that require integration, expansion, processing and sequencing of specific skills." The report set forth numerous examples of Tyrique's difficulties in the communication/language arts area, including "answering questions after hearing a story, story retelling, writing by sounding out words." (R. 115).

Even more significantly, the report expressly states that Tyrique "is not communicating nor is his expressive/receptive language progressing at age expected levels <u>given his inability to retain, process and integrate specific learning objectives</u>. His inattention, self-stimulating vocalizations and movements, limited participation in group activities and easy distraction <u>impede Tyrique's ability to learn, retain and use new information skills.</u>" (R. 115).

Plaintiff's first grade teacher, Alena Lutton, completed a school activities questionnaire on January 31, 2005, in which she gave numerous concrete examples of Tyrique's limitations in using and acquiring information. Specifically, she reported that "receptive language is a problem" for Tyrique, noting that if he is asked a specific question he does not always know how to answer it and that he does not "give the logical answer" if asked when something happened. (R. 74). She also noted that he does not complete his work without teacher supervision and that he does not follow verbal directions well. (R. 73). She also reported that she believed his grades may drop when given tests that must be read independently. (R. 75).

All of the foregoing evidence demonstrates that Tyrique has "more than moderate" but "less than extreme" limitations in the domain of acquiring and using information in that his impairments interfere seriously with his ability to initiate, sustain or complete activities in this domain. 20 C.F.R. §416.926a(e)(2). Accordingly, the evidence establishes marked limitations in the domain of acquiring and using information.[5] Yet, despite the

---

[5] The court finds unavailing the Commissioner's argument on appeal that Tyrique cannot be considered to have marked limitations because there is no indication in the record that he has standardized test scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R. §416.926a(e)(2)(i). Here, there are no standardized test results available. Moreover, the regulations provide that the Commissioner is not to rely on any test score alone, but will consider test scores together with the other information available about the child's functioning, including reports of classroom performance and observations of school personnel and others. 20 C.F.R. §416.926a(e)(4)(i) and (ii). The regulations also

foregoing evidence, the ALJ nevertheless concluded that Tyrique's limitations were less than marked. His rationale discounting some of the foregoing evidence fails to withstand substantial evidence scrutiny.

For example, the ALJ found Dr. Bernstein's analysis "of limited usefulness" because he "appears to have merely accepted allegations from Tyrique's mother." (R. 14). However, the regulations recognize that parents, along with medical sources and teachers, are "important sources of information" in assessing disability in children. 20 C.F.R. §416.924a(a)(2)(i). In addition, Dr. Bernstein did not merely rely on Tyrique's mother, but examined Tyrique himself.

Moreover, there is no explanation in the record as to why the ALJ decided to discount Dr. Bernstein's assessment of Tyrique's abilities in the domain of acquiring and using information, but did not raise similar doubts as to Dr. Bernstein's assessment in the domain of attending and completing tasks, a domain in which the ALJ concluded Tyrique's limitations are marked.

As to school records, while acknowledging Tyrique's verbal abilities, receptive vocabulary, school readiness and abilities to apply problems and quantitative concepts were in the low average

---

instruct that "[n]o single piece of information taken in isolation can establish whether you have a marked or extreme limitation in a domain." 20 C.F.R. §416.926a(e)(4)(i). Here, all of the information available, taken together, establishes marked limitations in the domain of acquiring and using information within the meaning of the regulations, and the absence of test scores showing that Tyrique is two standard deviations below the mean does not change that result.

range, the ALJ considered as more significant that there was no evidence of a learning disability, his general cognitive abilities were assessed as average, and he was not in special education classes. However, all of the areas in which Tyrique is below average are areas that fall within the domain of acquiring and using information. 20 C.F.R. §416.926a(g). For example, the regulations recognize that a child should have "readiness skills", e.g., using words to ask questions, give answers, follow directions, describe things, explain what you mean and tell stories, by the time the child begins first grade. (Id.) However, these are the very skills that Tyrique's mother, teachers, and medical sources all indicate Tyrique was having significant difficulties in even half-way through first grade.

In addition, the regulations expressly provide that one of the factors to be considered in evaluating a child's functioning is how that child's functioning compares to the functioning of other children of that age who do not have impairments, and one of the considerations to be taken into account in that regard is "how much help [the child] need[s] from [the child's] family, teachers or others." 20 C.F.R. §416.924a(b)(3)(i). Here, Tyrique's first grade teacher indicated that Tyrique is unable to complete his work assignments without teacher supervision.

Finally, the fact that Tyrique is not in special education classes does not preclude a finding that he has marked limitations in the domain of acquiring and using information. The regulations provide that the fact that the child does or does not receive

special education services does not, in itself, establish the child's actual limitations or abilities. 20 C.F.R. §416.924a(b)(7)(iv).

In contrast to the evidence of record supporting a finding of marked limitations in the domain of acquiring and using information, there is a dearth of evidence to the contrary. Tyrique's preschool teacher, Mary Ann McGough, completed a child care questionnaire on February 8, 2003, in which she indicated that Tyrique "does projects on his own with no help or support" and that "he loves to learn". (R. 59). However, it should be noted that Ms. McGough had not seen Tyrique for six months prior to filling out the questionnaire and had only taught Tyrique for two months. Moreover, Ms. McGough's report is inconsistent with all of the other evidence of record, from Tyrique's mother, other teachers and Dr. Bernstein.

The only other evidence in the record that would suggest a finding that Tyrique's limitations are less than marked in the domain of acquiring and using information is from the state agency reviewer, Dr. Dalton, who concluded Tyrique had no limitations in acquiring and using information. (R. 110). But Dr. Dalton's assessment cannot be deemed substantial evidence in support of the ALJ's finding for two reasons.

First, the ALJ did not follow Dr. Dalton's assessment that Tyrique has no limitations in the domain of acquiring and using information, but instead found less than marked limitations. Second, the ALJ clearly rejected Dr. Dalton's assessment in the

- 11 -

domain of attending and completing tasks, as Dr. Dalton concluded Tyrique had no limitations in that domain either and the ALJ found marked limitations in attending and completing tasks.

The ALJ determined that Tyrique has marked limitations in the domain of attending and completing tasks.  However, the same evidence that supports a finding of marked limitations in that domain also supports a finding that he has marked limitations in the domain of acquiring and using information.  There is no logical basis upon which the ALJ properly could have accepted that evidence to support his finding in one domain but rejected it in regard to another domain. Substantial evidence of record supports the ALJ's finding of marked limitations in the domain of attending and completing tasks.  That same evidence dictates a finding of marked limitations in the domain of acquiring and using information.  Because Tyrique has marked limitations in two domains of functioning, his impairments functionally equal the listings and he is disabled within the meaning of the Act.

When the record has been developed fully, and when substantial evidence in the record as a whole indicates that a claimant is disabled and entitled to benefits, it is unreasonable to remand because of the resulting delay in receipt of benefits, and the decision of the Commissioner will be reversed. <u>Podedworny v. Harris</u>, 745 F.2d 210, 221-222 (3d Cir. 1984). Here, the record has been developed fully and substantial evidence exists supporting a finding that Tyrique Heard is disabled within the meaning of the Act.  Therefore, a remand for additional evaluation

of the evidence would be inappropriate in this case.

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings solely to determine the amount of benefits to which plaintiff is entitled.

 

*/s/ Gustave Diamond*
Gustave Diamond
United States District Judge


cc: Pamela Dalton-Arlotti, Esq.
    Neighborhood Legal Services Association
    928 Penn Avenue
    Pittsburgh, PA 15222

    Jessica Smolar
    Assistant U.S. Attorney
    United States Post Office & Courthouse
    700 Grant Street, Suite 4000
    Pittsburgh, PA 15219